IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LATANYA MARIE SESSION,

    Plaintiff,

v.

PLM LENDER SERVICES, INC., MONTEREY BAY RESOURCES, INC., BETSY BLISS, GRAHAM STOKES, MICHAEL B. REINHOLD, WILLIAM S. CASSILLY, JULIE OAK, KENNETH M. KIMMEY, BLAKE CESARIN, LORELEI HELM, CHERYL M. HALEY, HOWARD EDDY, TY EBRIGHT, ANN EBRIGHT, CONSTANZ FRIE, HOWARD J. LIM, REIKO K. LIM, MATTHEW LOPEZ, and DOES 1–50,

    Defendants.

No. C 10-04942 WHA

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

In this foreclosure dispute, defendants Ty Ebright, Ann Ebright, and Monterey Bay Resources, Inc. move to dismiss plaintiff's complaint pursuant to FRCP 12(b)(6). For the reasons stated below, defendants' motion is **GRANTED**.

## STATEMENT

Plaintiff's complaint alleges the following. Plaintiff is the victim of defendants' "predatory lending scheme" through which defendants "regularly enticed unqualified, low-income borrowers to take out high-interest, private loans when they lack the income to otherwise qualify for a loan." Plaintiff is an "elderly, disabled, African-American woman" and asserts herself to be the owner of a property in San Francisco that is the subject of this dispute due to

three loan agreements between plaintiff and her brother, Mr. Session, and defendants (Compl. ¶¶ 1, 13, 23).

In April 1988, plaintiff and her siblings inherited the subject property from her parents, plaintiff owning 62.5% interest in the property and Mr. Session owning 37.5% interest. Plaintiff asserts that Mr. Session was mentally disabled throughout all of the events alleged and regarded by most as "retarded." He could not read or write, had difficulty understanding words, and said the same phrases repeatedly. Mr. Session received social security for his disability and was unable to sign his name (Compl. ¶¶ 25–26).

Sometime prior to April 2004, plaintiff saw a commercial featuring Dan Jordan, a "loan representative or business associate" of defendant Ty Ebright. Plaintiff called Mr. Jordan to inquire about a loan for home improvements, and she was referred to Mr. Ebright. At the time plaintiff spoke to Mr. Ebright, her and her brother's only source of income was social security: plaintiff received $1,100 per month while Mr. Session received $800-$900 per month. Despite their combined income of $2,000 per month, Mr. Ebright recommended a $200,000 home loan (Compl. ¶¶ 28, 30–31).

In April 2004, plaintiff entered into the first loan agreement for $200,000 at an initial interest rate of 11% in exchange for her execution of a promissory note and a first deed of trust on the property. The terms of the agreement required plaintiff to pay $1,833.33 per month and granted the deed of trust holders the right to adjust the initial rate up to 21%. The loan also carried a pre-payment penalty. The loan documents were mailed to plaintiff, and she signed them and returned them. Plaintiff, however, does not recall Mr. Session signing the documents, but an Agent of Mr. Ebright did meet with him. The signature appearing to be Mr. Session's on the loan document does not resemble his signature, and plaintiff alleges that he was without capacity to sign the documents (Compl. ¶¶ 31–32).

Prior to entering the loan agreement, the "material terms of the transaction" were not disclosed to plaintiff. Defendants must have known that plaintiff could not afford the loan, but they concealed that fact and did not take "into consideration her ability to make the scheduled

2

payments." Plaintiff did not make a payment on this loan nor did she receive a single bill through the end of 2005 (Compl. ¶¶ 33–34).

In July 2005, plaintiff "suffered an anoxic brain injury resulting in loss of motor and cognitive functions." She remained in the hospital for over three years, and returned home in November 2008. Plaintiff, however, has never fully recovered from the injury. She suffered permanent damage, and "has been diagnosed as having a cognitive disorder and since returned to the emergency room for other medical problems" (Compl. ¶¶ 35–36).

Shortly after plaintiff's brain injury occurred, Mr. Ebright knew she was in the hospital and encouraged her to take out a second loan, despite the fact that she had not made a payment on the first loan. In late 2005, plaintiff entered into the second loan agreement with defendants for $10,000. Because she was still recovering from her injury, plaintiff "could not sign her own name, and had difficulty remembering things." Plaintiff did not have a clear understanding of the terms of this transaction, and Mr. Ebright, fully aware plaintiff's mental capabilities had been compromised, "failed to fully and completely disclose the material terms" of the second loan (Compl. ¶¶ 38–40).

Mr. Ebright subsequently visited her in the hospital and encouraged her to take out a third loan. Mr. Ebright gave her an ultimatum: "pay down the existing loan by entering into a new loan or face foreclosure." Plaintiff was very ill at this time and "does not remember anything related to another loan taken out under her name." Due to her and her brother's mental incapacity, plaintiff and Mr. Session appointed Matthew Lopez as their attorney in fact at the behest of Mr. Ebright. Mr. Lopez was appointed "for the special and limited purpose of drawing another mortgage," but no one evaluated the mental capacities of plaintiff or Mr. Session to determine if they were capable of such an appointment. Like some of the loan documents, Mr. Session's signature on the document appointing the attorney in fact does not match his ID card (Compl. ¶¶ 41–42).

In May 2006, Mr. Lopez obtained a third loan on behalf of plaintiff and Mr. Session. The loan was for $46,000 at a fixed interest rate of 12%, and it required a monthly payment of $2,293.33. Plaintiff disputes defendant's contention that these loan funds were used for home

3

renovations at her property. Defendants also failed to accurately disclose the fees and the terms of the third loan to plaintiff, and again placed her into a loan "on which her eventual default was certain." Both plaintiff and Mr. Session suffered from cognitive impairments such that "neither of them had a clear understanding of the material terms of the transaction" when they granted Mr. Lopez the authority to enter into the third loan. Mr. Session died in 2007, after the third loan agreement (Compl. ¶¶ 43, 46–48).

In June 2006, plaintiff defaulted on the third loan without ever having made a payment. Mr. Ebright then recorded a notice of default against the property in July 2007. Before filing for foreclosure, however, defendants "continued to charge excessive fees and interest rates, exhausting the equity left" in the property, and sending the final amount owed on the first and third loans to over $400,000 (Compl. ¶ 49).

In December 2008, defendant Ann Ebright allegedly completed a non-judicial sale of the property under the third deed of trust. Plaintiff did not receive proper notice of the foreclosure proceedings because notice was not sent to the property or the hospital where plaintiff was staying. At the foreclosure sale, Ms. Ebright — the only bidder present — purchased the property for $101,000 (Compl. ¶¶ 50–51).

Plaintiff commenced this action in November 2010, alleging the following nine claims for relief: (1) intentional misrepresentation; (2) predatory lending; (3) Equal Credit Opportunity Act violation; (4) Truth in Lending Act violation; (5) Unconscionability; (6) quiet title; (7) violation of Business and Professions Code Section 17200; (8) breach of fiduciary duty; and (9) financial elder abuse. Defendants Ty Ebright, Ann Ebright, and Monterey Bay Resources, Inc. now move to dismiss the complaint for failure to state a claim pursuant to FRCP 12(b)(6). No other defendants have joined this motion. This order follows full briefing and a hearing.

**ANALYSIS**

**1.     STANDARD OF REVIEW.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual

4

allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Dismissal is only proper if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### 2. PLAINTIFF'S ABILITY TO PURSUE LITIGATION.

Defendants first argue that plaintiff "all but alleges her own incompetency" in her complaint. The complaint does demonstrate that plaintiff suffered a brain injury that required her to spend over three years in a hospital (Compl. ¶ 35). Plaintiff also alleges that she "has never fully recovered from the anoxic brain injury," and she suffered permanent damage. Moreover, "[s]he has been diagnosed as a [sic] having a cognitive disorder and has since returned to the emergency room for other medical problems" (Compl. ¶ 36). Furthermore, the complaint is verified by Johnetta George, plaintiff's daughter, instead of plaintiff herself. Ms. George claimed to have the power of attorney to make decisions on her mother's behalf. She also stated, "[m]y mother knows the contents of the Complaint to the best of her current mental capabilities" (Compl. ¶ 25).

In opposition to defendants' motion to dismiss, plaintiff contends in one sentence that she "does not lack capacity to sue." She also states that even so, a lack of capacity does not deny her a right to sue. She then describes different ways in which a guardian ad litem can be appointed to pursue this litigation on her behalf (Opp. 5). Finally, plaintiff provides the following footnote (Opp. 6 n.1):

> It should be noted that Defendants have not challenged [plaintiff's] verification, which was signed by her daughter, Johnetta George, who has the power of attorney over her mother. Nor have Defendants provided any authority that an individual with power of attorney cannot bring a lawsuit for someone they have legal authority over.

5

1    Plaintiff's complaint and opposition to this motion leave questions as to her current
2 capacity as well as her daughter's role in this litigation. Because of this plaintiff and her daughter
3 were ordered to appear at the December 22 hearing in order to resolve this issue. This issue will
4 be addressed in a separate order.

**3.    STATUTES OF LIMITATION.**

6    Defendants contend that all nine of plaintiff's claims are barred by the applicable statutes
7 of limitation, the longest of which is four years (Br. 7). Plaintiff, however, argues that her injuries
8 and hospitalization "equitably tolled the relevant limitations periods pending her reasonable
9 discovery of these acts" (Opp. 7). The order agrees with defendants.

10    Plaintiff entered into the first loan agreement in 2004, the second in 2005, and the third in
11 May 2006 (Compl. ¶¶ 31, 39, 43). She filed her complaint more than four years later, in
12 November 2010. Plaintiff concedes that the applicable statutes of limitation for each of her
13 claims is either one year, two years, three years, or four years (Opp. 8–10). Because her claims
14 for intentional misrepresentation, predatory lending, violation of TILA, unconscionability, breach
15 of fiduciary duty, violation of Business and Professions Code Section 17200, quiet title, and
16 financial elder abuse all arise out of the events surrounding the completion of the first, second,
17 and third loans, the events alleged must have occurred by May 2006, when the final loan was
18 completed. The statutes of limitation bar these claims, which were not asserted by plaintiff until
19 November 2010. November 2010 is beyond four years after the events alleged, and four years is
20 the longest of the applicable statutes.

21    Plaintiff concedes that four years is the longest possible time-bar to her claims, but she
22 asserts that the statutes should be equitably tolled due to her inability to discover the facts
23 constituting her claims (Opp. 7). Plaintiff's failure to plead such facts regarding the tolling of the
24 statutes in her complaint, however, is fatal to her argument.

25    Plaintiff did not plead any facts in her complaint to establish the equitable tolling of any
26 statutes of limitation. She stated that she suffered a brain injury and was hospitalized for over
27 three years, until 2008 (Compl. ¶ 35). She also alleged that she was very ill when she entered into
28 the third loan agreement and "does not remember anything related to [that] loan taken out under

6

her name" (Compl. ¶ 41). The only paragraph in the entire complaint to mention any statute of limitation or equitable tolling is a part of her claim for violation of the TILA and reads as follows: "Any and all statute(s) of limitations relating to disclosure and notices required pursuant to 15 U.S.C. § 1601, *et seq.* were tolled due to Defendants' failure to effectively provide the required disclosures and notices" (Compl. ¶ 72). This conclusory statement along with the facts of plaintiff's injury are not enough to establish the equitable tolling of all statutes of limitation.

The discovery rule does provide for the equitable tolling of the statutes of limitation to the date when a plaintiff discovered or should have been able to discover the facts constituting her claim. "A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (internal quotations omitted). In order to rely on the discovery rule to delay the running of the statues of limitation, a "plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (internal citation omitted).

Nowhere does plaintiff's complaint allege when she actually made the discovery of the facts underlying her asserted claims. She also failed to assert facts showing why her discovery of the facts could not have been made sooner. She got out of the hospital in 2008 and a notice of default had already been recorded by defendants. The home was sold at a non-judicial foreclosure sale in December 2008 (Compl. ¶¶ 35, 49–50). Yet, plaintiff did not file this action until November 2010. Accordingly, the absence of facts alleged in her complaint as to why she could not discover the facts sooner and when she did discover them are insufficient to establish equitable tolling.

Plaintiff's attempt to supplement the facts alleged in her complaint with her opposition brief is not allowed. A plaintiff cannot avoid dismissal of her complaint by alleging new facts in opposition to a motion to dismiss. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the inmates' opposition motion, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a

7

1  court may not look beyond the complaint to a plaintiff's moving papers . . . ."). Thus, plaintiff's
2  explanation in her opposition that illness and hospitalization caused her to be unable to discover
3  the facts contained in her complaint and that she did not discover anything until defendants
4  commenced an unlawful detainer action against her cannot be considered in resolving this motion
5  regarding the sufficiency of the complaint (Opp. 7–8).

Finally, plaintiff also alleges a claim for violation of the Equal Credit Opportunity Act. Like plaintiff's other eight claims, this claim is also barred by the statute of limitation. Plaintiff's complaint asserts (Compl. ¶ 67):

> Defendants' unfair and deceptive origination and servicing of Ms. Session's mortgage loans violate Section 1691 through 1691f of the Equal Opportunity Act, in that Defendants' discretionary pricing policy charged African-American borrowers higher points and fees than similarly situated white borrowers, even though the economic circumstances of the borrowers and the loans were substantially similar.

Defendants contend that this claim is time-barred, and plaintiff failed to allege equitable tolling. This order agrees.

All parties agree that an action brought under the Act must be commenced no more "than two years after the date of the occurrence of the violation." 15 U.S.C. 1691e(f). The complaint was filed more than two years after the third of the three loans was completed, but plaintiff asserts that it is subject to the continuing violations doctrine (Opp. 8). The continuing violations doctrine is applicable "where a plaintiff challenges an ongoing discriminatory practice rather than an isolated incident of conduct, and the practice continues into the limitations period, the complaint is timely if filed within the statutory period from the last occurrence of the practice." *Taylor v. Accredited Home Lenders, Inc.*, 580 F. Supp. 2d 1062, 1065 (S.D. Cal. 2008) (Houston, J.) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81(1982)).

Plaintiff's claim for violation of the Act asserted that a practice existed of offering higher fees to African-American borrowers (Compl. ¶ 67). Plaintiff, however, asserts in her opposition that the "last occurrence of the practice" of targeting African-American borrowers with a "discretionary pricing policy" charging higher fees, occurred in December 2008, when her property was sold (Opp. 9). The Act states that it is unlawful to allow creditors to "discriminate

8

1  against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race."
2  15 U.S.C. 1691(a)(1). Applicant is defined as "any person who applies to a creditor directly for
3  an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an
4  existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C.
5  1691a(b). Plaintiff did not allege any facts to show that she was a credit applicant under the
6  statute any time after she entered into the final loan in 2006. Plaintiff's complaint also fails to
7  state why her home being sold would be a "last occurrence of the same practice" of targeting
8  African-American borrowers rather than a mere consequence of the initial discrimination.

This action is inapposite to the decisions on which plaintiff relies. Plaintiff cites to *Ramirez v. GreenPoint Mortgage Funding, Inc.*, 633 F. Supp. 2d 922 (N.D. Cal. 2008) (Henderson, J.) to argue in favor of the continuing applications doctrine. That decision involves a class action complaint for a disparate impact claim under the Act. *Id.* at 926. "The ongoing discrimination plaintiffs allege could only manifest itself after a critical mass of similarly situated people experienced it, so as to bring an over-arching pattern to light." *Id.* at 930. Plaintiff in this action is seeking relief only for herself and not an over-arching pattern that took time to develop. Plaintiff also relies on *Taylor v. Accredited Home Lenders, Inc.*, 580 F. Supp. 2d 1062 to advocate for the application of the continuing violation doctrine. The plaintiff in that case alleged facts to show that she continued to make mortgage payments into the limitations period. Each time she made a payment, she was charged a higher rate than similarly situated white borrowers. *Id.* at 1065-66. Thus, the violations continued into the statutory period. Similarly, another court has applied the doctrine when the defendants continued to offer the plaintiff loan modifications, each time extending the statute of limitations. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011). Plaintiff has failed to meet this standard.

Accordingly, all nine of plaintiff's claims as pled are barred by the applicable statutes of limitation. Defendant's motion to dismiss the complaint is **GRANTED**.

Because this order finds that plaintiff has failed to plead sufficient facts to state a claim that is not barred by the statute of limitations, it does not reach defendants' alternative argument

9

that this Court must abstain from jurisdiction because California state jurisdiction has already attached to the property by way of an unlawful detainer action against plaintiff.

Defendants also request judicial notice of one document. That document, however, does not bear on the outcome of this motion. Accordingly, defendants' request for judicial notice is **DENIED AS MOOT**.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's complaint is **GRANTED**. All of plaintiff's claims are dismissed.

As to any claims dismissed above, plaintiff may seek leave to amend the complaint and will have **28 CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein.

**IT IS SO ORDERED.**

Dated: December 22, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10