**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BESS KENNEDY, as guardian *ad litem* for
LATANYA MARIE SESSION,

    Plaintiff,

  v.

PLM LENDER SERVICES INC, MONTEREY
BAY RESOURCES, INC., BETSY BLISS,
GRAHAM STOKES, MICHAEL B.
REINHOLD, WILLIAM S. CASSILLY, JULIE
OAK, KENNETH M. KIMMEY, BLAKE
CESARIN, LORELEI HLEM, CHERYL M.
HALEY, HOWARD EDDY, TY EBRIGHT,
ANN EBRIGHT, CONTANZ FRIE, HOWARD
J. LIM, REIKO K. LIM, MATTHEW LOPEZ,
and DOES 1–50,

    Defendants.

No. C 10-04942 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

**INTRODUCTION**

In this foreclosure dispute, plaintiff moves for leave to amend her complaint pursuant to FRCP 15(a). For the reasons stated below, plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

This action arises out of the non-judicial sale of a property in San Francisco. Bess Kennedy was appointed guardian *ad litem* for plaintiff Latanya Marie Session, an "elderly, disabled, African-American woman." Plaintiff Ms. Session's original complaint was filed

in November 2010. Most of Ms. Session's allegations were made on information and belief, owing to her physical and mental incapacity following a brain injury in 2005. Ms. Session's discovery of the facts giving rise to her claims allegedly did not occur until 2010.

According to the complaint, Ms. Session and her brother, Winston Session, were actively misled into signing a series of loan documents they did not or could not understand. In April 1988, Ms. Session and her brother inherited the subject property from their parents. Mr. Session was mentally disabled throughout all of the events alleged. He could not read or write and had difficulty understanding words (Compl. ¶¶ 25–26).

The first loan documents were signed in 2004. Despite their combined social security income of $2,000 per month, defendant Ty Ebright, a loan representative, recommended Ms. Session and her brother take our a $200,000 home loan. The terms of that agreement required Ms. Session to pay $1,833.33 per month. Ms. Session does not recall her brother signing the documents. The signature appearing to be Mr. Session's on the loan document does not resemble his signature, and he was without capacity to sign the documents (Compl. ¶¶ 28, 30–32).

In July 2005, Ms. Session suffered an anoxic brain injury resulting in loss of motor and cognitive functions. She remained in the hospital for over three years, and returned home in November 2008. Ms. Session has never fully recovered from the injury (Compl. ¶¶ 35–36).

Shortly after Ms. Session's brain injury occurred, Mr. Ebright knew she was in the hospital and encouraged her to take out a second loan, despite the fact that she had not made a payment on the first loan. In late 2005, Ms. Session apparently entered into the second loan agreement with defendants for $10,000. Because she was still recovering from her injury, Ms. Session could not sign her own name, and had difficulty remembering things (Compl. ¶¶ 38–40).

Mr. Ebright subsequently visited her in the hospital and gave her an ultimatum: "Pay down the existing loan by entering into a new loan or face foreclosure." Due to her and her brother's mental incapacity, Ms. Session and her brother appointed Matthew Lopez as their attorney in fact at the behest of Mr. Ebright. Mr. Lopez was appointed "for the special and

2

limited purpose of drawing another mortgage." Like some of the loan documents, Mr. Session's signature on the document appointing the attorney in fact does not match other samples of his signature (Compl. ¶¶ 41–42).

In May 2006, Mr. Lopez obtained a third loan on behalf of plaintiff and Mr. Session. Both she and Mr. Session suffered from cognitive impairments such that neither of them had a clear understanding of the material terms of the transaction when they granted Mr. Lopez the authority to enter into the third loan. Mr. Session died in 2007 (Compl. ¶¶ 43, 46–48).

In June 2006, Ms. Session defaulted on the third loan without ever having made a payment. Mr. Ebright then recorded a notice of default against the property in July 2007. Before filing for foreclosure, however, defendants continued to charge excessive fees and interest rates, exhausting the equity left in the property, and sending the final amount owed on the first and third loans to over $400,000 (Compl. ¶ 49).

In December 2008, defendant Ann Ebright allegedly completed a non-judicial sale of the property under the third deed of trust. Defendant PLM Lender Services, Inc. acted as trustee. Ms. Session did not receive proper notice of the foreclosure proceedings because notice was not sent to the property or the hospital where she was staying. At the foreclosure sale, Ms. Ebright — the only bidder present — purchased the property for $101,000 (Compl. ¶¶ 50–51).

Ms. Session's original complaint alleged nine claims for relief: (1) intentional misrepresentation; (2) predatory lending; (3) violation of the Equal Credit Opportunity Act; (4) violation of the Truth in Lending Act; (5) unconscionability; (6) quiet title; (7) violation of California Business and Professions Code Section 17200; (8) breach of fiduciary duty; and (9) financial elder abuse. Defendants Ty Ebright, Ms. Ebright, and Monterey Bay Resources, Inc. moved to dismiss the complaint for failure to state a claim pursuant to FRCP (12)(b)(6). Following full briefing and a hearing, an order issued granting defendants' motion on the ground that all of Ms. Session's claims were barred by the applicable statutes of limitations, the longest of which was four years. That order further stated that plaintiffs could seek leave to amend the complaint (Dkt. No. 60).

3

1   On January 19, 2012, plaintiff Bess Kennedy, on behalf of Ms. Session, filed the instant
2   motion seeking leave to file a first amended complaint. Defendants Ty Ebright, Ann Ebright,
3   Constanz Frie, and Monterey Bay Resources, Inc., (collectively "Ebright Defendants") filed
4   an opposition on February 6. Defendant PLM separately opposes plaintiff's motion.

## ANALYSIS

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Pursuant to FRCP 15(a)(2), a district court should freely give leave to amend when justice so requires, absent a showing of bad faith, dilatory motive, or undue prejudice to another party. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Leave to amend may be denied, however, if the proposed amendment is futile or would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

FRCP 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend. FRCP 9(b) requires that in all averments of fraud the circumstances constituting fraud must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Though fraud allegations based on information and belief generally do not satisfy FRCP 9(b), our court of appeals has relaxed that standard with respect to matters within the opposing party's knowledge. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

### 1. SETTLEMENT AGREEMENT.

The parties dispute the efficacy of a handwritten global settlement agreement. In February 2010, defendant Ann Ebright initiated an unlawful detainer action in San Francisco Superior Court against Ms. Session and her daughter, seeking possession of the subject property. On December 22, 2010, the parties to the state court action signed a handwritten document resulting from settlement negotiations. Under the terms of that agreement, Ms. Ebright would vacate the foreclosure sale and return title to plaintiff, in exchange for monthly payments and eventual satisfaction of the principal amount of $300,000. In turn, plaintiff was required to dismiss this action (Goldstein Decl. Exh. B).

Ms. Ebright recently filed a motion in the unlawful detainer action to enforce the handwritten agreement. That motion was heard on March 7, 2012. In response to this Court's order, plaintiff submitted notice that Ms. Ebright's motion was denied (Dkt. No. 84). In light of the state court judge's ruling, plaintiff is not precluded from amending the complaint in this action on the basis of an enforceable settlement.

### 2. EQUITABLE TOLLING.

Dismissal of eight of plaintiff's claims was based on failure to allege equitable tolling under the discovery rule. Plaintiff concedes that the applicable statute of limitations for each of her claims was either one, two, three, or four years. In opposing defendants' motion to dismiss, plaintiff argued that her claims should be equitably tolled in light of Ms. Session's inability to discover the facts constituting those claims.

The discovery rule provides a basis for equitable tolling. "A plaintiff has reason to a cause of action when he or she has reason at least to suspect a factual basis for its elements." In order to invoke the discovery rule to toll the statute of limitations on a claim, a plaintiff must specifically plead facts to show: (1) the time and manner of discovery and (2) the inability to have made an earlier discovery despite reasonable diligence. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807–808 (2005).

Plaintiff's original complaint failed to assert facts showing when Ms. Session made the discovery of the facts underlying her asserted claims. The dismissal order noted that

5

Ms. Session "got out of the hospital in 2008 and a notice of default had already been recorded by defendants. The home was sold at a non-judicial foreclosure sale in December 2008. Yet plaintiff did not file this action until November 2010 " (Dkt. No. 60 at 7). Merely alleging facts in her opposition brief did not establish equitable tolling, as moving papers cannot cure deficiencies in the complaint.

Plaintiff's proposed amended complaint cures this deficiency. Ms. Session alleges she never received notice of the non-judicial foreclosure sale of the property in 2008, as no notices were sent to or posted on the subject property. Ms. Session further alleges that she only discovered the facts giving rise to each of her claims in 2010, following production of documents in an unlawful detainer action brought by Ms. Ebright in San Francisco Superior Court. Included in those documents was information about the terms and execution dates of the second and third loans. Plaintiff now alleges Ms. Session was unaware of the existence of these loans prior to this discovery. Plaintiff's proposed amended complaint also alleges Ms. Session did not have reasonable opportunity to discover the second or third loans both because she did not receive proper notice from defendants and because she lacked the capacity to communicate due to severe physical and cognitive impairments. In light of Ms. Session's medical condition, it is feasible that she did not discover the facts giving rise to her claims before 2010, and that she was unable to make an earlier discovery (Br. Ex. A. ¶¶ 54, 56, 59).

Defendants argue that plaintiff's discovery rule allegations are "impermissibly vague and inconsistent." Specifically, defendants state that Ms. Session's alleged incapacity during key events and later discovery of her claims cannot be reconciled against her allegations that defendant Ty Ebright visited her hospital bed and induced her son-in-law to obtain a power of attorney to execute the loans. Plaintiff's several specific allegations regarding the execution of defendants' scheme, however, are made on information and belief. Plaintiff's discovery rule allegations are not inconsistent with those events that allegedly occurred without Ms. Session cognition. Plaintiff's several contentions regarding the method defendants employed to obtain Ms. Session and her brothers' signatures are sufficient. In light of the circumstances of her

6

illness at the time she contracted with defendants, defendants are uniquely positioned to know the relevant facts underlying these claims (Br. Exh. A. ¶¶ 39, 42).

### 3. CONTINUING VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT.

Dismissal of plaintiff's ECOA claim was granted based on plaintiff's failure to allege equitable tolling under the continuing violation doctrine. Plaintiff's proposed amendment does not cure this deficiency. Under the Equal Credit Opportunity Act ("ECOA"), it is unlawful for creditors to "discriminate against applicant, with respect to any aspect of a credit transaction . . . on the basis of race." 15 U.S.C. § 1691(a)(1). Any action brought under the ECOA must be commenced no more than "two years after the date of the occurrence of the violation." 15 U.S.C. § 1691(e)(f). Plaintiff's original complaint was filed more than two years after the final loan was completed. In her original complaint, plaintiff failed to allege equitable tolling.

In opposing defendants' motion to dismiss, plaintiff argued her claim should be tolled under the doctrine of continuing violations (Dkt. No. 48 at 8). The continuing violations doctrine applies where "a plaintiff challenges an ongoing discriminatory practice rather than an isolated incident of the conduct, and the practice continues into the limitations period" and plaintiff's complaint is filed "within the statutory period from the last occurrence of the practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982). The dismissal order found that plaintiff had failed to allege any facts to show that she was a credit applicant under the ECOA any time after 2006, the time of the final loan. That order further found that plaintiff had "failed to state why her home being sold would be a last occurrence of the practice of targeting African-American borrowers rather than a mere consequence of the initial discrimination" (Dkt. No. 60 at 9).

Plaintiff's proposed amended complaint does not cure the defect in pleading equitable tolling of the ECOA claim. The proposed amended complaint merely alleges, on information and belief, that defendants' actions "constitute a continuing violation of the ECOA, because defendants continue to target African-American borrowers in lower-income neighborhoods in San Francisco" (Br. Exh. A. ¶ 79). No facts are alleged to show how plaintiff was targeted on

7

the basis of race. No specific instances of continuing violations are alleged. Because plaintiff has failed to cure the identified defect, leave to file a first amended complaint is accordingly **DENIED** as to the ECOA claim.

### 4. PREJUDICE.

Defendants allege that Ms. Session "has been living in the house rent free since [the time of the foreclosure sale], and has availed herself of every possibility to extend her living situation no matter the merit." Defendants further allege that Ms. Session's refusal to carry out the terms of the contested settlement agreement established "clear prejudice to defendants and bad faith by [plaintiff] and her representatives." Finally, defendants make unsubstantiated statements that the subject property is "being used by [plaintiff]'s family for various types of criminal activity," and that "[s]everal people were recently shot at the property which is known to police as a location of drug sales and gang activity" (Opp. 9). None of these bald assertions even comes close to establishing what prejudice, if any, would befall defendants by allowing plaintiff leave to amend her complaint.

### 5. SECTION 2924*l*.

Defendant PLM separately opposes plaintiff's motion, alleging that it is excluded from this action pursuant to California Civil Code Section 2924*l*, which allows a trustee to file a declaration of non-monetary status. PLM was the trustee and/or agent for the beneficiary under the deed of trust on the subject property. PLM filed a declaration of trustee's non-monetary status in October 2011 but did not join the Ebright defendants' motion to dismiss (Dkt. No. 32). Section 2924*l* provides that if

> a trustee under a deed of trust is named in an action or proceeding in which that deed of trust is the subject, and in the event that the trustee maintains a reasonable belief that it has been named in the action or proceeding solely in its capacity as trustee

then the trustee "may file a declaration of non-monetary status." If timely objections are not raised, then

> the trustee shall not be required to participate any further in the action or proceeding, shall not be subject to any monetary awards and for damages, attorneys' fees or costs, shall not be required to respond to any discovery requests as a nonparty, and shall not

8

> be bound by any court order relating to the subject deed of trust
> that is the subject of the action or proceeding.

Cal. Civ. Code § 2924*l*. Plaintiff did not oppose PLM's declaration, but contends that a Section 2924*l* declaration is ineffective in an action filed in federal court.

Our court of appeals has not ruled on whether a Section 2924*l* declaration is recognized in federal court. Application of Section 2924*l* has varied among the district courts in this circuit. This order joins the courts in agreement with *Tran v. Washington Mutual*, which held that Section 2924*l* declarations are not recognized by federal courts under the *Erie* doctrine. No. 09-CV-3277, 2010 WL 520878 at *3 (E.D. Cal. Feb. 11, 2010) (Karlton, J.) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).[*]

Under the *Erie* doctrine, federal law governs procedure in the federal courts, irrespective of whether the substantive law at issue is state or federal. Where an issue is directly covered by the FRCP, federal law controls. "It is immaterial whether a different result would have been reached in a state court action if state procedural law had been applied.." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1102 (9th Cir. 2003). Whether Section 2924*l* may properly be applied in federal court depends on whether such an application would result in a "direct collision" with the FRCP. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972 (9th Cir. 1999).

Section 2924*l* directly collides with FRCP 7(a), which specifies the *only* pleadings allowed in federal court. FED. R. CIV. P. 7(a). A declaration of non-monetary status is not listed under FRCP 7(a). Section 2924*l* governs a pleading: It sets the procedure for filing and serving, the time for objections and result of a party's failure to timely object. These procedural requirements directly conflict with the exclusive list of pleadings allowed and governed by the FRCP. Accordingly, Section 2924*l* is here inapplicable under the *Erie* doctrine.

At the hearing, defendant PLM argued that *Tran* should not control, as the opinion cited only *Erie*. This order finds that *Erie*, as elucidated by decades of Supreme Court jurisprudence,

---

[*] Some district courts have recognized Section 2924*l* declarations where the action originated in state court and subsequently removed. The district courts which have recognized Section 2924*l* declarations where the action originated in federal court have done so without comment. *See e.g. Pinales v. Quality Loan Serv. Corp.*, No. 09-CV-1884, 2010 WL 3749427 at *1 n. 1(S.D. Cal. Sept. 22, 2010) (Lorenz, J.).

9

renders PLM's Section 2924l declaration of non-monetary status ineffective. Accordingly, defendant PLM is properly named in plaintiff's proposed first amended complaint.

If Section 2924*l* were an integrated part of a statutory claim for relief such that it would be unfair to allow plaintiff the benefit of one half of the statute, without recognizing the other half relieving defendant PLM of obligation, this order would rule differently. In that event, the declaration of non-monetary status would be enforced. But this is not such a situation.

This order has already granted plaintiff leave to amend the complaint, but notes that no specific factual allegations have been made against defendant PLM. While defendant PLM failed join the Ebright defendants' motion to dismiss, it did so believing its Section 2924*l* declaration would be given effect. To avoid unnecessary motion practice, plaintiff is encouraged to now plead her best case against defendant PLM.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to file a first amended complaint is **GRANTED.** Plaintiff must file the second amended complaint by **NOON ON APRIL 10, 2012.** Defendants must serve their answers by **NOON ON APRIL 24, 2012.**

**IT IS SO ORDERED.**

Dated: March 27, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10