IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BESS KENNEDY, as Guardian *Ad Litem* for
LaTanya Marie Session,

    Plaintiff,

  v.

MONTEREY BAY RESOURCES, INC., TY
EBRIGHT, ANN EBRIGHT, CONSTANZ
FRIE, MATTHEW LOPEZ, PLM LENDER
SERVICES, INC., and DOES 1-50,

    Defendants.

                                         /

No. C 10-04942 WHA

**ORDER DENYING
DEFENDANT'S
MOTION TO DISMISS**

**INTRODUCTION**

In this foreclosure dispute, one defendant moves to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion to dismiss plaintiff's complaint is **DENIED**.

**STATEMENT**

Plaintiff's complaint alleges the following. Plaintiff is the victim of defendants' "predatory lending scheme" through which defendants "regularly entice unqualified, low-income borrowers to take out high-interest, private loans when they lack the income to otherwise qualify for a loan." Plaintiff is an "elderly, disabled, African-American woman" and asserts herself to be the owner of a property in San Francisco that is the subject of this dispute due to two loan

1  agreements between plaintiff and her brother, Mr. Session, and defendants (First Amd. Compl.
2  ¶¶ 1, 13, 23).

3        Sometime prior to April 2004, plaintiff saw a commercial featuring Dan Jordan, a "loan
4  representative or business associate" of Ty Ebright. Plaintiff called Mr. Jordan to inquire about
5  a loan for home improvements, and she was referred to Ty Ebright. At the time plaintiff spoke
6  to Ty Ebright, her and Mr. Session's only source of income was social security: plaintiff
7  received $1,100 per month while Mr. Session, who was mentally disabled, received $800–$900
8  per month. Despite their combined income of $2,000 per month, Ty Ebright recommended a
9  $200,000 home loan (First Amd. Compl. ¶¶ 28, 30–31).

10        In April 2004, plaintiff entered into the first loan agreement for $200,000 at an initial
11  interest rate of eleven percent in exchange for her execution of a promissory note and a first deed
12  of trust on the property. Defendant PLM Lender Services, Inc. served as a trustee to the loan.
13  Defendant PLM is the sole moving defendant in the instant action. The terms of the agreement
14  required plaintiff to pay $1,833.33 per month and granted the deed of trust holders the right to
15  adjust the initial rate up to 21 percent. The loan also carried a pre-payment penalty. The loan
16  documents were mailed to plaintiff, and she signed them and returned them. Plaintiff, however,
17  does not recall Mr. Session signing the documents, but an agent of Ty Ebright did meet with
18  him. The signature purporting to be Mr. Session's on the loan document does not resemble his
19  signature, and plaintiff alleges that he was without capacity to sign the documents (First Amd.
20  Compl. ¶¶ 31–32).

21        Prior to entering the loan agreement, the "material terms of the transaction" were not
22  disclosed to plaintiff. Plaintiff asserts that defendants must have known that plaintiff could not
23  afford the loan, but they concealed that fact and did not take "into consideration her ability to
24  make the scheduled payments." Plaintiff did not make a payment on this loan nor did she
25  receive a single bill through the end of 2005 (First Amd. Compl. ¶¶ 33–34).

26        In July 2005, plaintiff "suffered an anoxic brain injury resulting in loss of motor and
27  cognitive functions." She remained in the hospital for over three years, and returned home in
28

November 2008. Plaintiff, however, has never fully recovered from the injury (First Amd. Compl. ¶¶ 35–36).

Shortly after plaintiff's brain injury occurred, Ty Ebright knew she was in the hospital and encouraged her to take out a second loan, despite the fact that she had not made a payment on the first loan. Because she was still recovering from her injury, plaintiff "does not remember anything related to loan [sic] executed in her name in 2006." Ty Ebright allegedly gave her an ultimatum: "pay down the existing loan by entering into a new loan or face foreclosure." Due to her and Mr. Session's mental incapacity, plaintiff and Mr. Session appointed Matthew Lopez as their attorney in fact at the behest of Ty Ebright. Lopez was appointed "for the special and limited purpose of drawing another mortgage," but no one evaluated the mental capacities of plaintiff or Mr. Session to determine if they were capable of such an appointment. Like some of the loan documents, Mr. Session's signature on the document appointing the attorney in fact does not match his ID card (First Amd. Compl. ¶¶ 38–40).

In May 2006, Lopez obtained another loan on behalf of plaintiff and Mr. Session. The loan was for $46,000 at a fixed interest rate of twelve percent, and it required a monthly payment of $2,293.33. Defendant PLM served as the trustee on the loan.

Plaintiff alleges that Ty Ebright knew plaintiff's mental capabilities were compromised and purposefully failed to fully and completely disclose the material terms of the second loan to plaintiff before or at the time of the loan transaction. Plaintiff further alleges that defendants Ty Ebright, Monterey Bay Resources, Inc., PLM, and Lopez conspired to fraudulently execute the second loan documents. Ty Ebright, MBR and Lopez allegedly knew that plaintiff had not made any payments towards the first loan when the second loan was executed. PLM, acting as a trustee on both the first and second loan, knew or should have known that plaintiff could not afford a second loan, yet still agreed to serve as trustee to the second loan (First Amd. Compl. ¶¶ 41–43).

Plaintiff further alleges that approximately $35,500 of the second loan amount was put into a reserve account. Of the $35,500, approximately $8,000 of the loan amount (22 percent of the reserve) was used to pay the initial commissions, fees, costs and expenses. Defendant PLM

received $22,300 of the loan amount through the reserve. Plaintiff alleges that defendants Ty Ebright, MBR, and PLM used the rest of the money in the reserve to pay down the first loan. Due to the high interest rate, the principal balance on the first loan remained at $200,000 and plaintiff's monthly payments on the first loan remained at $1,833.33. Defendant Ty Ebright further claimed that the proceeds from the second loan were used for renovations that were overseen by his wife, Constanz Frie (First Amd. Compl. ¶¶ 44–45).

Plaintiff has no memory of the terms of the second loan or giving her consent to execute the attorney in fact or second loan agreement documents. She alleges on information and belief that Lopez conspired with Ty Ebright, MBR, and PLM to purposefully act without her consent and against her best interests by executing the second loan when defendants knew she could not afford it. Plaintiff further alleges that the loan proceeds were directed to Lopez without plaintiff's consent and that the remaining funds, a large portion of which was directed to a reserve account in PLM's name, were not used for renovations. Building permits filed in 2004 and 2008 indicate that the renovations to the property totaled only $15,700 (First Amd. Compl. ¶¶ 46–47).

In June 2006, plaintiff defaulted on the second loan without ever having made a payment. Ty Ebright then recorded a notice of default against the property in July 2007. Before filing for foreclosure, however, defendants "continued to charge excessive fees and interest rates, exhausting the equity left" in the property, and sending the final amount owed on the first and second loans to over $400,000 (First Amd. Compl. ¶ 51).

In December 2008, defendant PLM allegedly sold the subject property to defendant Ann Ebright through a non-judicial foreclosure sale of the subject property under the second deed of trust. At the foreclosure sale, Ann Ebright, the only bidder present, purchased the property for $101,000. Plaintiff allegedly did not receive proper notice of the foreclosure proceedings because notice was not sent to the property or the hospital where plaintiff was staying. Plaintiff alleges that defendant PLM knew or should have known that she was in the hospital until November 2008 and purposefully failed to serve her with any foreclosure-related documents (First Amd. Compl. ¶¶ 53–54).

4

Defendant Ann Ebright initiated an unlawful detainer action against plaintiff and her daughter, Johnetta George, in San Francisco County Superior Court. In March 2010, plaintiff's counsel reviewed discovery responses and documents provided by defendant Ann Ebright. Through their review, plaintiff's counsel learned of the existence of the second loan. Prior to this time, plaintiff allegedly was unaware that the loan existed (First Amd. Compl. ¶¶ 55–57).

Plaintiff alleges on information and belief that defendants PLM, Lopez, Constanz Frie and Ann Ebright conspired with defendants Ty Ebright and MBR to facilitate execution of the second loan, fraudulently misuse the proceeds from the loan, and subsequently foreclose on the loan and purchase the subject property in a non-judicial foreclosure sale without providing proper notice to plaintiff (First Amd. Compl. ¶¶ 115).

Plaintiff's original complaint alleged nine claims for relief. Defendants Ty Ebright, Ann Ebright, and MBR moved to dismiss plaintiff's complaint pursuant to FRCP 12(b)(6). An order issued granting defendants' motion to dismiss on the ground that all of plaintiff's claims were barred by the applicable statutes of limitations, the longest of which was four years. Plaintiff was granted leave to amend (Dkt. No. 60).

Plaintiff's motion to file a first amended complaint was granted. It alleges seven claims for relief against defendant PLM: (1) intentional misrepresentation; (2) civil conspiracy to defraud; (3) violation of Truth in Lending Act; (4) unconscionability; (5) breach of fiduciary duty; (6) violation of California Business and Professions Code Section 17200; and (7) financial elder abuse.

Defendant PLM now moves to dismiss all seven of plaintiff's claims against it for failure to state a claim. None of the other defendants joined this motion.

**ANALYSIS**

Defendant PLM made money by receiving a fee for all transactions. PLM was in bed with a scheme by other defendants to defraud persons in distress like Ms. Session or so it is alleged. While PLM did not perpetrate the fraud itself, it knew or suspected that such a fraud was underway and continued to facilitate transactions by the other defendants in order to continue receiving transaction fees. At this stage before discovery, the Court is unwilling to

5

conclude that there is no scenario by which PLM could be found liable for the alleged wrongdoing done to Ms. Session. This ruling is without prejudice to a motion for summary judgment after a reasonable opportunity for discovery. Plaintiff's counsel would be well advised to promptly proceed to investigate the case against PLM and, if FRCP 11 so requires, to dismiss the case.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 20, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE